# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BANG BANG MERCHANDISE LLP,<br><br>Plaintiff,<br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>Defendants. | Case No. 25-cv-3943 |

## COMPLAINT

Plaintiff, Bang Bang Merchandise LLP ("Plaintiff"), by and through its attorneys, Aronberg Goldgehn Davis & Garmisa, for its Complaint against The Partnerships and Unincorporated Associations Identified on Schedule A (collectively referred to as "Defendants") states as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

### Nature of the Case

1. Plaintiff uses and is the owner of several federal registered trademarks used in connection with various products ("Arctic Monkeys Marks"). A true and correct copy of the registration certificate for Plaintiff's Trademarks are attached as **Exhibit A**.

2. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products using infringing and counterfeit versions of Plaintiff's federally registered Arctic Monkeys Marks ("Unauthorized Arctic Monkeys Products").

3. Defendants use and operate fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto, which is filed under seal (the "Seller Aliases").

4. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Arctic Monkeys Products to unknowing consumers.

5. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

6. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation.

7. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered Arctic Monkeys Marks, as well as to protect unknowing consumers from purchasing Unauthorized Arctic Monkeys Products over the Internet.

8. Defendants further utilize images from Plaintiff's website in conjunction with the sale of products with the same or similar appearance as those sold by Plaintiffs, further causing confusion among customers.

9. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

---

[1] The e-commerce store urls are listed on Schedule A under the Online Marketplaces.

**The Parties**

10. Plaintiff is a limited company incorporated in The United Kingdom.

11. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.

12. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems or redistribute products from the same or similar sources in those locations.

13. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

14. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.

15. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**Jurisdiction**

16. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq* and 28 U.S.C. § 1331.

17. This Court has personal jurisdiction over Defendants because Defendants transacted business relative to the claims made within the State of Illinois and within this District and because Defendants purposefully availed themselves of the benefits and privileges of conducting business activities within the State of Illinois and within this District.

18. More particularly, Defendants utilize online retail accounts to promote and offer to sell the Unauthorized Arctic Monkeys Products in Illinois and to Illinois residents, have sold the Unauthorized Arctic Monkeys Products to one or more customers in Illinois, and provide for the shipment of the Unauthorized Arctic Monkeys Products to customers in Illinois.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are foreign defendants and are subject to this Court's personal jurisdiction as alleged above or under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction.

**Factual Background**

*Plaintiff's Products Branded Under the Arctic Monkeys Marks*

21. Plaintiff is an entity formed by four members of the English rock band Arctic Monkeys. The entity manages, among other things, the band's trademarks.

22. The Arctic Monkeys have been together for over 20 years and is comprised of band members Alex Turner, Matt Helders, Jamie Cook, and Nick O'Malley. Their decades long success is memorialized in many fashions, including nine Grammy nominations, ten Brit Awards nominations (winning seven of those categories), alongside other major accolades including being named the UK's "Best British Group." In total, they have achieved nearly 150 nominations and/or wins of major music awards globally.

23. Plaintiff is engaged in the business of manufacturing, distributing, and retailing high quality consumer goods, including within the Northern District of Illinois District (collectively, "Plaintiff's Products") under the federally registered trademarks identified in Exhibit

A. Defendants' sales of Unauthorized Arctic Monkeys Products in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

24. Plaintiff is the owner of all rights, title, and interest in and to, inter alia, the Arctic Monkeys Marks. The registrations are valid, subsisting, unrevoked, and uncancelled pursuant to 15 U.S.C. § 1065. The registrations for the Arctic Monkeys Marks constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the Arctic Monkeys Marks pursuant to 15 U.S.C. § 1057(b).

25. Since then, Plaintiff has marketed, advertised, sold, and offered for sale Plaintiff's Products under the Arctic Monkeys Marks.

26. The Arctic Monkeys Marks have been used exclusively and continuously by Plaintiff and have never been abandoned.

27. The trademark registrations constitute *prima facie* evidence of each of the Arctic Monkeys Marks' validity and of Plaintiff's exclusive right to use the Arctic Monkeys Marks pursuant to 15 U.S.C. § 1057(b).

28. The Arctic Monkeys Marks are distinctive when applied Plaintiff's Products, signifying to the purchasers that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufacturers the products itself or contracts with others to do so, Plaintiff has ensured that products bearing the Arctic Monkeys Marks are manufactured to the highest quality standards.

29. Based on the Arctic Monkeys Marks having been in continuous and substantially exclusive use, as well as being the subject of the expenditure of substantial resources in promoting and advertising the Arctic Monkeys Marks, it is recognized as indicators of source for Plaintiff's

Products, and are the embodiments of the substantial and valuable goodwill associated with Plaintiff's Products, and Plaintiff's customer services respecting its products.

30. Through its marketing, diligence, services and commitment to excellence, Plaintiff has established a celebrated and high-distinguished brand.

31. The Arctic Monkeys Marks are a critical component of consumer's ability to readily identify Plaintiff's Products.

32. The Arctic Monkeys Marks are extremely valuable assets of Plaintiff.

33. Plaintiff maintains authorizes sellers of products that utilize its trademarks for the United States. By only permitting authorized sellers to use and sell Plaintiff's Products in the United States, Plaintiff is able to maintain control over the seller's quality commitments, customer service requirements, and product handling. These restrictions are important and valuable to Plaintiff to ensure that customers of Plaintiff's Products not only receive genuine goods, but also enjoy the appropriate high level of service and customer care that is represented by the Arctic Monkeys Marks and its good will. It also ensures that Plaintiff is able to provide sufficient inventory to its authorized sellers so that the sellers are able to fulfill orders for the product, and not cancel orders.

34. Plaintiff uses and is the owner of a website, which it has been using continuously since it has been using the Arctic Monkeys Marks, where Plaintiff markets, advertises, sells, and offers for sale Plaintiff's Products under the Arctic Monkeys Marks ("Plaintiff's Website").

35. Plaintiff has made substantial effort in protecting its interests in the Arctic Monkeys Marks. Only Plaintiff and Plaintiff's licensees and/or individuals or businesses it expressly authorizes are entitled to manufacture, import, export, advertise, offer for sale, derive from, or sell any goods utilizing or featuring the Arctic Monkeys Marks.

36. Plaintiff has not licensed or authorized any Defendant to manufacture, import, export, advertise, offer for sale, derive from, or sell any goods utilizing or featuring the Arctic Monkeys Marks.

*Defendants' Wrongful Acts*

37. The success of the Plaintiff's brand has resulted in its significant counterfeiting.

38. Plaintiff has launched a brand protection program to investigate suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.

39. Recently, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Unauthorized Arctic Monkeys Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in an increase in the shipment and importation of unauthorized products into the United States.

40. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to routinely use false or inaccurate names and addresses when registering with these e-commerce platforms. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.

41. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and have sold Unauthorized Arctic Monkeys Products to one or more residents of Illinois.

42. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.

43. Plaintiff has not licensed or authorized Defendants to use the Arctic Monkeys Marks and none of the Defendants are authorized retailers of Plaintiff's Products.

44. More specifically, Defendants are not authorized sellers of Plaintiff's Products in the Unites States. Defendants operate outside of Plaintiff's authorized seller network and are not subject to the same levels of control and requirements as Plaintiff's authorized sellers. Because of that, Plaintiff is not able to demand the same level of customer care and product handling that it can of its authorized sellers. As a consequence, customers purchasing from Defendants can have negative purchasing experiences which damages Plaintiff, its brand, and its goodwill.

45. Defendants know that they are not authorized dealers of Plaintiff's Products, and through the use of the Arctic Monkeys Marks, intend to induce customers to purchase from them, rather than from authorized dealers thereby damaging Plaintiff including by damaging Plaintiff's ability to maintain its authorized dealer network and the quality controls associated with it.

46. Many Defendants also deceive unknowing consumers by using the Arctic Monkeys Marks without authorization within the content, text, and/or meta tags of their e-commerce stores

to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiff's Products.

47. Many Defendants further package their products in packaging that appears nearly identical to the product packaging used to sell genuine products under the Arctic Monkeys Marks. The false packaging is further effort to confuse customers that believe they have purchased genuine products and is intended by Defendants to try and pass off the infringing products while evading detection.

48. Defendants routinely sell their infringing products at price points that are well below the value of Plaintiff's Products. The reduced prices, packaging and product images, and use of the Arctic Monkeys Marks are used by Defendants to trick customers into purchasing an infringing and inferior product.

49. Plaintiff extensively researches the market and identifies those entities, such as Defendants, that are not approved vendors of Plaintiff's Products.

50. Defendants are not approved vendors.

51. Defendants' sales of products at below value prices further establish Defendants' products are counterfeit.

52. Other e-commerce stores operating under Seller Aliases omit using the Arctic Monkeys Marks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiff's Products.

53. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

54. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Arctic Monkeys Products. Such selleralias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

55. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics,similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use ofthe same text and images. Additionally, Unauthorized Arctic Monkeys Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Arctic Monkeys Products were manufactured by and come from a common source and that Defendants are interrelated.

56. On information and belief E-commerce store operators like Defendants are in regular communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

57. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move

funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, it has been reported that financial transaction logs from previous cases involving claims similar to the present claims indicate that off-shore counterfeiters regularly movefunds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

58. On information and belief, Counterfeiters such as Defendants will work in conjunction with a U.S. based shipping agency that will receive the counterfeit goods from overseas, then label it with a U.S. shipping label and ship the package, making it appear as if the infringing goods originated within the U.S., or originated with a U.S. seller when they did not.

59. On information and belief, Defendants are working in active concert to knowingly and willfully manufacture,import, distribute, offer for sale, and sell Unauthorized Arctic Monkeys Products in the same transaction, occurrence, or series of transactions or occurrences.

60. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the Arctic Monkeys Marks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Arctic Monkeys Products into the United States and Illinois over the Internet.

61. Defendants' unauthorized use of the Arctic Monkeys Marks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Arctic Monkeys Products, including the sale of Unauthorized Arctic Monkeys Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers.

62. Defendants' wrongful acts and/or willful infringements have caused and will continue to cause irreparable harm to Plaintiff unless permanently enjoined, for which Plaintiff has no adequate remedy at law.

63. Defendants are profiting and will continue to profit from their unlawful actions.

64. Defendants' unlawful actions are causing and will continue to cause Plaintiff monetary damages in an amount presently unknown, but to be determined at trial.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

65. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

66. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Arctic Monkeys Marks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.

67. The Arctic Monkeys Marks are highly distinctive.

68. Consumers have come to expect the highest quality from products offered, sold or marketed under the Arctic Monkeys Marks.

69. The Defendants identified in Schedule A have sold, offered to sell, marketed, distributed, and advertised, and are still actually or planning on selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Arctic Monkeys Marks without Plaintiff's permission.

70. Plaintiff's United States Registrations for the Arctic Monkeys Marks (Exhibit A) is in full force and effect.

71. On information and belief, Defendants have knowledge of Plaintiff's rights in the Arctic Monkeys Marks, and are willfully infringing and intentionally using infringing and counterfeit versions of the Arctic Monkeys Marks.

72. Defendants' willful, intentional and unauthorized use of the Arctic Monkeys Marks are likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Arctic Monkeys Products among the general public.

73. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

74. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Arctic Monkeys Marks.

75. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Arctic Monkeys Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

76. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

77. With respect to the Defendants identified in Schedule A, Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Arctic Monkeys Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Arctic Monkeys Products by Plaintiff.

78. By using the Arctic Monkeys Marks in connection with the sale of Unauthorized Arctic Monkeys Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Arctic Monkeys Products.

79. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Arctic Monkeys Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

80. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of the Plaintiff's brand.

## COUNT III
## VIOLATIONS OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, et seq.)

81. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

82. Defendants have engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq. by causing likelihood of confusion or misunderstanding as to the source, origin, or sponsorship of the parties' respective products or services; causing likelihood of confusion or of misunderstanding as to the affiliation, connection, or association of Defendants or their products with Plaintiff's products and using deceptive representations or designations of origin in connection with Defendants' products.

83. Defendant's' deceptive trade practices include marking its products and promotional material with the Arctic Monkeys Marks when Defendants had no right to do so.

84. Defendants' deceptive trade practices further include operating an online retail stores that use the Arctic Monkeys Marks in conjunction with the advertisement and sale of goods when Defendants had no right to do so.

85. The unauthorized use by Defendants of Plaintiff's Arctic Monkeys Marks are causing, and is likely to cause, substantial injury to the public and to Plaintiff, and Plaintiff has no adequate remedy at law for such injuries.

86. Plaintiff is entitled to injunctive relief under 815 ILCS § 510/3.

87. On information and belief, Defendants were aware of Plaintiff's Arctic Monkeys Marks and knowingly and willfully engaged in deceptive trade practices entitling Plaintiff to an award of its costs and attorney's fees under 815 ILCS § 510/3.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Arctic Monkeys Marks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not Plaintiff's Products or is not authorized by Plaintiff to be sold in connection with the Arctic Monkeys Marks;

b. using the Arctic Monkeys Marks or any reproduction, counterfeit, copy, or colorable imitation of the same, in any manner likely to cause others to believe that Defendants' products are approved by Plaintiff;

c. passing off, inducing, or enabling others to sell or pass off any product as Plaintiff's Products or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Arctic Monkeys Marks;

d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Arctic Monkeys Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Arctic Monkeys Marks, or any reproductions, counterfeit copies or colorable imitations thereof;

f. disposing of, destroying, moving, secreting, relocating, and/or transferring any and all of Defendants' Unauthorized Arctic Monkeys Products, without Court direction; and

g. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs;

2. Enter an Order, upon Plaintiff's request, those with notice of the injunction, including without limitation, any online marketplace platforms such as eBay, AliExpress, Wish.com, and Walmart.com (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Arctic Monkeys Marks;

3. Enter an Order that Defendants and any and all persons controlled by or acting in concert with Defendants to be required to deliver up to Plaintiff for destruction all goods, packages, and any other written or printed materials (including electronic files) that bear or depict the Arctic Monkeys Marks, or any reproduction, counterfeit, copy, or colorable imitation of the same, or that are otherwise in violation of this Court's order issued pursuant hereto, and all means for making the same;

4. For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered trademarks, pursuant to 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c);

5. That Plaintiff be awarded actual damages, statutory damages, and/or other available damages, at the election of Plaintiff; and that the amount of damages for infringement are increased by a sum not to exceed three times the amount thereof as provided by 15 U.S.C. § 1117;

6. Find that this is an exceptional case and award Plaintiff the attorneys' fees, costs, and disbursements, with interest, expended in connection with any actions taken to investigate and confirm the claims made herein pursuant to 15 U.S.C. § 1117 or otherwise by law;

7. Find that Defendants knowingly and willfully engaged in deceptive trade practices and awarding Plaintiff its costs and attorneys' fees under 815 ILCS § 510/3;

8. Award Plaintiff pre-judgment and post-judgment interest on each and every monetary award; and

9. Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: April 14, 2025                                   Respectfully submitted,

                                                        /s/ *Karolina Jozwiak*
                                                        Karolina Jozwiak
                                                        ***One of the Attorneys for Plaintiff***

Matthew De Preter
Sofia Quezada Hastings
Karolina Jozwiak
ARONBERG GOLDGEHN DAVIS & GARMISA
225 W. Washington St. Suite 2800
Chicago, IL 60606
312-755-3139
cdepreter@agdglaw.com
shastings@agdglaw.com
kjozwiak@agdglaw.com